UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| NATIONAL COUNCIL OF JEWISH WOMEN, GREATER NEW ORLEANS CHAPTER,<br><br>        Plaintiff,<br><br> v.<br><br>NANCY LANDRY, in her official capacity as Secretary of State for Louisiana; and CHARLENE MEUAX-MENARD, Lafayette Parish Registrar of Voters,<br><br>        Defendants. | Civil Action No.<br>3:25-CV-00676<br><br>Judge John W. deGravelles<br><br>Magistrate Judge Erin Wilder-Doomes |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO STAY PROCEEDINGS**

    Defendants Nancy Landry and Charlene Meuax-Menard respectfully move to stay all proceedings for 60 days. A stay would promote judicial efficiency without unfairly disadvantaging either party. Plaintiff opposes the motion.

## BACKGROUND

    **1.** *Federal Framework.* The National Voting Registration Act, 52 U.S.C. §§ 20501 *et seq.*, creates a two-track approach for voter registration: Applicants may use either a federally created voter-registration form (Federal Form) or a state-created form (State Form). *See* § 20505(a). The Federal Form can generally be used in all States that permit mail registration. *Arizona v. Inter Tribal Council of Ariz., Inc. (ITCA)*, 570 U.S. 1, 5 (2013). But it does include state-specific instructions that

the Election Assistance Commission (EAC) adopts with individual-State input. *Id.* at 5–6; *see* § 20508(a)(2). States have latitude in designing their own State Form, so long as they follow the permissive requirements of Section 20505(a)(2). Under this statutory framework, voters can either pick a "simple means of registering to vote in federal elections" through the Federal Form or choose the State Form, which can "require information the Federal Form does not." *ITCA*, 570 U.S. at 12.

**2.** *Louisiana Voting Laws.* In 2024, the Louisiana Legislature passed Act 500—SB 436. *See* 2024 La. Sess. Law Serv. Act 500 (SB 436). Governor Landry signed the bill into law, and it took effect January 1, 2025. It changed Louisiana's election laws in two ways: *First*, it added to the list of ineligible voters anyone "who is … [n]ot a citizen of the United States." La. R.S. 18:102(A)(3); *accord* 18 U.S.C. §§ 611, 1015(f). *Second*, it added to the requirement for the application for registration that "[e]ach applicant shall include with his application proof of United States citizenship." La. R.S. 18:104(D)(2). In light of the statutory changes, Louisiana was required to inform the EAC of the changes to its State voter-eligibility requirements. *See* 11 C.F.R. § 9428.6(c).

**3.** *History of Proceedings.* On January 30, 2025, on behalf of the State of Louisiana and the chief election official, the Department of State submitted to the EAC a notice of the changes to Louisiana's voter-eligibility requirements. Ex. 1 at 1 (Jan. 30, 2025 Letter from Jennifer Bollinger, Executive Counsel, to Brianna Schletz, Executive Director EAC). The State also requested modification to the Louisiana-specific instructions on the Federal Form. *Id.* The State requested an effective date

2

of January 15, 2026, for revisions to the state-specific instructions, and a decision from the EAC no later than July 1, 2025. *Id.* The State included two different options for the revisions—labeling them Option 1(A) and Option 1(B). *Id.* at 2–3. The State explained that it would be extremely inefficient and burdensome for Louisiana to maintain dual voter registration implementation and verification practices.[1] *Id.* at 1. To avoid those challenges, Secretary Landry determined that the most efficient strategy for implementing Act 500 was to provide the EAC an opportunity to approve revisions to the state-specific instructions on the Federal Form before amending Louisiana's State Form (formally called Louisiana's Voter Registration Application). *See id.* The State estimates it will take approximately six months to implement revisions to the State Form after the EAC's decision. *Id.*

On February 24, 2025, the State submitted an amended and supplemental request that included additional modifications to the state-specific instructions on the Federal Form. Ex. 2 ¶ 4 (Declaration of Catherine J. Newsome, First Assistant Secretary of State).

On August 1, 2025—while the State awaited a decision from the EAC—Plaintiff (a policy-driven civic engagement group) sued Defendants, both in their official capacities. ECF No. 1 (Compl.). Plaintiff primarily alleges a slew of NVRA violations. Compl. ¶¶ 167–76 (Count I: violation of the "necessary to assess"

---

[1] In this context, a dual voter registration system refers to systems that require proof of U.S. citizenship to vote in state and local elections but not in federal elections. Some states maintain dual voter registrations—with one voter roll for state and local elections and another voter roll for federal elections. *E.g.* Ariz. Sec'y of State, Registering to Vote, t.ly/wIhor (last visited Sept. 28, 2025).

3

provision); ¶¶ 177–85 (Count II: violation of the "registration agency" provision); ¶¶ 186–90 (Count III: violation of the "ensure registration" provision); ¶¶ 191–95 (Count IV: violation of the "accept and use" provision); ¶¶ 196–202 (Count V: violation of the "motor vehicle" provision); ¶¶ 203–11 (Count VI: violation of the "materiality" provision); *see* Compl. ¶¶ 212–231 (Count VII: § 1983 claim for violations of the First and Fourteenth Amendments). All of Plaintiff's NVRA claims speculate about modifications of the State Form and Federal Form.

On May 17, 2025, the State requested the EAC to pause its review of the State's January request so that the State could submit additional evidentiary information. Newsome Decl. ¶ 5. And, on June 25, 2025, the State asked the EAC to resume its review and to consider the additional information provided (such as supplemental Louisiana election statistics data). *Id.*; *see* Ex. 2 at 3 (Exhibit 1 to Newsome Decl.: June 15, 2025 Letter from First Assistant Secretary Newsome to Executive Director Schletz) (explaining the supplemental information was needed, in part, to respond to federal Executive Order 14,248 "Preserving and Protecting the Integrity of American Elections")). The June Letter also flagged another change in the law dictating the State's process for voter registration applications (unrelated to Act 500) and added another request to modify state-specific instructions on the Federal Form related to that change in law. June Letter at 1.

To provide sufficient time to implement revisions to the State Form, Louisiana again requested an effective date of January 15, 2026, for all requested revisions, and asked for a decision from the EAC no later than August 1, 2025. *Id.* at 1–2 (reiterating

4

the efficiency concerns and the anticipated six-month timeline to implement revisions to the State Form).

On September 11, 2025, the EAC responded the Louisiana's request. Ex. 3 (Sept. 11, 2025 EAC Letter to Secretary Landry (EAC Decision)). The EAC "reject[ed] the request to amend the Louisiana state-specific instructions for Box 6 of the Federal Form as presented in Option 1(A)." *Id.* at 5. The EAC, however, "did not independently consider Option 1(B)" and invited Louisiana to "request that the Commission consider Option 1(B) independent of the Commission's disposition of Option 1(A)." *Id.* Louisiana made such a request on September 26, 2025, and asked for "prompt consideration." Ex. 4 at 1–2 (Sept. 16, 2025 Letter from Jennifer Bollinger to Executive Director Schletz).

If the EAC takes timely action on Louisiana's request to consider Option 1(B), the timeline provides the State sufficient time to amend the State Form after the EAC's final decision and before January 15, 2026.

## ARGUMENT

Because the State's Option 1(B) Request is currently pending before the EAC, Defendants request a stay of proceedings to allow a reasonable amount of time for the EAC to consider Option 1(B) for changing the state-specific instructions for the federal form. During the pendency of the requested 60-day stay, the State Defendants will not require that applicants include in their voter registration applications proof of United States citizenship, as provided in Act 500. A stay of proceedings thus best

serves the interest of judicial economy, and Plaintiff will not be harmed or prejudiced by a stay.[2]

**1.** The ability to stay proceedings "is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for the litigants." *Landis v. North American Co.*, 299 U.S. 248, 254 (1936). Courts thus have a "discretionary power to stay proceedings before it in the control of its docket and in the interests of justice." *McKnight v. Blanchard*, 667 F.2d 477, 479 (5th Cir. 1982); *Amec Constr. Mgmt., Inc. v. Fireman's Fund Ins. Co.*, No. CV 13-00718-JJB-EWD, 2016 WL 7468808, at *2 (M.D. La. May 31, 2016) (a "district court's wide discretion to grant a stay in a pending matter" comes from its "inherent power to regulate the flow of cases"). When "'the interests of justice seem[] to require such action,' a court may exercise its discretion to stay civil proceedings, postpone discovery, or impose protective orders and conditions.'" *Amec Constr. Mgmt.*, 2016 WL 7468808, at *2 (alteration in original) (quoting *Billiot v. Beavers*, No. 12-2946, 2015 WL 4397108, at *2 (E.D. La. July 13, 2015) (Engelhardt, J.)). "Proper use of this authority 'calls for the exercise of judgment, which must weigh competing interests and maintain an even balance.'" *Wedgeworth v. Fibreboard Corp.*, 706 F.2d 541, 545 (5th Cir. 1983) (quoting *Landis*, 299 U.S. at 254–55).

---

[2] Defendants' requested stay would necessarily encompass their current responsive pleading deadline, which is set for September 29, 2025. ECF No. 29. In light of the pending motion, Defendants respectfully request that the Court hold all pleading deadlines in abeyance pending resolution of the motion to stay.

6

A court's decision to grant a stay should take into account (1) "judicial economy," (2) "hardship and inequity on the moving party without a stay," and (3) "prejudice the non-moving party will suffer if a stay is granted." *Abrams v. Ochsner Clinic Found.*, No. CV 17-1755-SDD-EWD, 2018 WL 2746046, at *3 (M.D. La. June 7, 2018) (citation and quotation omitted). Put differently, a court should be "guided by the factors of judicial economy and convenience for the Court, for counsel, and for the parties." *United States v. FEDCON Joint Venture*, No. CV 16-13022, 2017 WL 897852, at *1 (E.D. La. Mar. 7, 2017) (citing *Landis*, 299 U.S. at 254). Such considerations "are counsels of moderation rather than limitations upon power," *Landis*, 299 U.S. at 255, but a stay should not be "of an indefinite duration," *McKnight*, 667 F.2d at 479.

**2.** Here, all considerations favor a 60-day stay.

*Judicial economy*. The interest of judicial economy would best be served by granting a stay. *See Falgoust v. Microsoft Corp.*, No. CIV.A.00-0779, 2000 WL 462919, at *2 (E.D. La. Apr. 19, 2000) (concluding "the interests of judicial economy would best be served by granting a stay" without further analysis). The State is following the NVRA's procedure for revising the state-specific instructions on the Federal Form. It previously submitted a notice of changes and requested revisions to the EAC, *see generally* Jan. Letter & June Letter; the EAC responded by rejecting one of the State's proposed options while encouraging the State to seek consideration of a second, *see generally* EAC Decision. The State has taken that course and has requested prompt consideration of Option 1(B). *See generally* Ex. 4. Louisiana has

7

made clear that prompt review is necessary because "it is not feasible for Louisiana to maintain a dual voter registration system," and it will take "approximately six months to implement revisions to the State Form." Jan. Letter at 1; *see* June Letter at 1–2. Forcing litigation at this point would waste everyone's time and resources— most notably for the State, the EAC, and this Court.[3] *See FEDCON*, 2017 WL 897852, at *3 (staying case when the use of alternate resolution "procedure[s] may resolve all or part of the dispute, making further proceedings limited or unnecessary"); *Abrams*, 2018 WL 2746046, at *4 ("judicial efficiency would be served by staying this suit pending a determination by the medical review panel" on overlapping issues).

Moreover, this approach is consistent with the approach this Court has taken in other litigation where the underlying legal landscape might be poised to shift, especially in the context of election-related laws. *See, e.g.*, Order, *Clark et al. v. Edwards et al.*, No. 3:86-cv-00435 (M.D. La. July 17, 2025) (staying proceedings in election-law case pending the Supreme Court's disposition of a similar case); *see also* Order, *Wessinger v. Cain*, No. 04-cv-637 (M.D. La. Sept. 25, 2023) (staying habeas ruling pending the Supreme Court's disposition of a similar case); *accord Disability Rights La. v. Landry*, No. CV 24-554-JWD-SDJ, 2024 WL 3566698, at *5 (M.D. La. July 29, 2024) (denying motion for preliminary injunction and motion to expedite on

---

[3] Not to mention the serious ripeness concerns that will arise should the motion to stay be denied, especially since the Department of State is not currently requiring applicants to include proof of United States citizenship in their voter registration application. *See Braidwood Mgmt., Inc. v. EEOC*, 70 F.4th 914, 930 (5th Cir. 2023) (A claim is not ripe if it is "contingent on future events that may not occur as anticipated, or indeed may not occur at all." (citation modified)); *United States v. Magana*, 837 F.3d 457, 459 (5th Cir. 2016).

*Purcell* principle grounds); *Singleton v. E. Baton Par. Sch. Bd.*, 621 F. Supp. 3d 618, 627 (M.D. La. 2022) (denying motions for temporary restraining order and preliminary injunction on *Purcell* principle grounds).

At bottom, the "public interest would be better served by conserving judicial and party resources in rendering a decision" only after sufficient time has passed to allow the EAC to issue its own decision regarding Option 1(B). *See* Order, *Clark*, No. 3:86-cv-00435 (M.D. La. July 17, 2025); *see also ITCA*, 570 U.S. at 19–20 (reasoning that the more appropriate action by Arizona would have been to seek an EAC determination according to the NVRA and to challenge the EAC's action under the APA).

*Hardship and inequity.* Absent a stay, Defendants would face the untenable posture of awaiting the EAC's determination on Option 1(B) even as they litigate the same EAC-contingent revisions in this Court. That would burden both the State Defendants and this Court. *See Strong ex rel. Tidewater, Inc. v. Taylor*, No. CIV.A. 11-392, 2013 WL 818893, at *4 (E.D. La. Mar. 5, 2013) ("Ultimately, allowing this suit to languish over the next weeks or months while the Board considers the demand would burden both the Defendants and this Court.").

*Prejudice.* Finally, Plaintiff will not be prejudiced by a 60-day stay. Plaintiff was presumably aware that the State requested revisions to the state-specific instructions on the Federal Form and were awaiting a decision by the EAC. The EAC has now engaged the issue—reviewing the State's submissions, rejecting one option, and expressly inviting consideration of Option 1(B)—so a brief delay tied to the

9

State's request for consideration of Option 1(B) is reasonably foreseeable. *See FEDCON*, 2017 WL 897852, at *3. And short delays are not prejudicial. *Falgoust*, 2000 WL 462919, at *2 ("Plaintiffs have failed to show any significant prejudice they would suffer, beyond the slight delay pending the JPML decision.").

Moreover, the State has requested an effective date of January 15, 2026, for the revisions. June Letter at 2. That is more than five months away. Any of Plaintiff's alleged injuries—even on their account—will not occur until the effective date, thus sparking Plaintiff's supposed need to divert resources and shift outreach plans. Finally, Plaintiff has not asked for expedited consideration. A stay does nothing more than preserve the status quo—without forcing the parties to prematurely litigate.

\*   \*   \*

Regardless of the EAC's decision on Option 1(B), staying the proceedings "is the most convenient and just manner of proceeding" because it "avoids imposing undue hardship or inequity on any party and best preserves the 'orderly course of justice.'" *Ha Thi Le v. Lease Fin. Group, LLC*, No. CV 16-14867, 2017 WL 2915488, at *6 (E.D. La. May 9, 2017) (citation omitted).

## CONCLUSION

This Court should use its discretionary authority to grant Defendants' motion to stay proceedings for 60 days.

| | |
|---|---|
| Dated: September 29, 2025 | Respectfully submitted, |
| | ELIZABETH B. MURRILL<br>Attorney General |
| /s/ Samuel W. Plauché IV<br>SAMUEL W. PLAUCHÉ IV (La #20444)<br>MEGAN TERRELL (La #29433)<br>HARRY VORHOFF (La #35365)<br>PLAUCHÉ & CARR<br>1110 River Rd S. Suite 200<br>Baton Rouge, LA 70802<br>Telephone: (225) 256-4028<br>Facsimile: (206) 588-4255<br>Billy@plauchecarr.com<br>Megan@plauchecarr.com<br>Harry@plauchecarr.com<br><br>*Counsel for Defendant Nancy Landry* | /s/ Zachary Faircloth<br>ZACHARY FAIRCLOTH (La #39875)<br>  Principal Deputy Solicitor General<br>KELSEY L. SMITH*<br>  Deputy Solicitor General<br>OFFICE OF THE LOUISIANA ATTORNEY GENERAL<br>1885 North Third Street<br>Baton Rouge, LA 70804<br>Telephone: (225) 421-4088<br>Facsimile: (225) 326-6795<br>FairclothZ@ag.louisiana.gov<br>SmithKel@ag.louisiana.gov<br><br>*Counsel for Defendants*<br><br>* admitted pro hac vice |

11