## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

NATIONAL COUNCIL OF JEWISH
WOMEN GREATER NEW ORLEANS,

                PLAINTIFF,

    v.

NANCY LANDRY, et al.,

              DEFENDANTS.

Civil Action No. 3:25-cv-676

c/w

Civil Action No. 3:25-cv-413

Judge: JWD - SDJ

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S COMPLAINT

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ iv

INTRODUCTION ................................................................................... 1

BACKGROUND ..................................................................................... 2

I.   THE SECRETARY OF STATE'S IMPLEMENTATION OF ACT 500 .................... 2

II. THIS LAWSUIT AND ITS FACTUAL ALLEGATIONS. ................................. 5

STANDARD OF REVIEW ......................................................................... 8

ARGUMENT ......................................................................................... 9

I.   THE COURT SHOULD DISMISS PLAINTIFF'S CLAIMS UNDER RULE
     12(B)(1) FOR LACK OF SUBJECT MATTER JURISDICTION. ...................... 9

     A.   Plaintiff Lacks Article III Standing. ...................................... 9

          1.   Plaintiff Lacks Organizational Standing. .................... 10

          2.   Plaintiff Lacks Associational Standing. ...................... 12

          3.   Fifth Circuit Precedent Independently Forecloses Standing
               for Plaintiff's Pre-enforcement Vagueness Claim. ........... 13

     B.   The Claims Are Not Ripe. ..................................... 14

     C.   Plaintiff Failed to Comply with the NVRA's Notice
          Requirement. ............................................... 15

     D.   The Secretary Is Entitled to Sovereign Immunity. .................. 16

          1.   The Secretary is entitled to sovereign immunity from the vagueness
               claim (Count VII). ..................................... 16

          2.   The Secretary is entitled to sovereign immunity from the materiality-
               provision claim (Count VI). ............................. 17

          3.   The Secretary is entitled to sovereign immunity from the NVRA Claims
               (Counts I, II, III, IV, & V). ........................... 18

II.  THE COURT SHOULD DISMISS PLAINTIFF'S CLAIMS UNDER RULE 12(B)(6). ............ 18

ii

A.   The Void-for-Vagueness Claim (Count VII) Fails. ....................................... 18

B.   The Civil Rights Act Claim (Count VI) Fails. ............................................. 20

  1.   Plaintiff lacks a private right of action to enforce the materiality
       provision. ................................................................................................. 20

  2.   In any event, the materiality-provision claim is meritless. ...................... 21

C.   The NVRA Claims (Counts I, II, III, IV, & V) Fail. .................................... 22

  1.   Plaintiff has not pled a plausible NVRA violation. .................................. 22

  2.   If the NVRA applies on these allegations, the NVRA is
       unconstitutional. ..................................................................................... 22

CONCLUSION.................................................................................................... 24

# TABLE OF AUTHORITIES

**Cases**

*Allen v. Cooper,*
  589 U.S. 248 (2020) ................................................................ 18

*Arizona v. Inter Tribal Council of Ariz., Inc. (ITCA),*
  570 U.S. 1 (2013) ..................................................... 2, 23, 24

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) .................................................................. 8

*Ass'n of Am. Physicians & Surgeons Educ. Found. v. Am. Bd. of Internal Med.,*
  103 F.4th 383 (5th Cir. 2024) ................................................ 15

*Benfield v. Magee,*
  945 F.3d 333 (5th Cir. 2019) .................................................... 9

*Braidwood Mgmt., Inc. v. Equal Emp. Opportunity Comm'n,*
  70 F.4th 914 (5th Cir. 2023)............................................. 14, 15

*Campaign Legal Ctr. v. Scott,*
  49 F.4th 931 (5th Cir. 2022)................................................... 11

*Carney v. Adams,*
  592 U.S. 53 (2020) .................................................................... 9

*Clapper v. Amnesty Int'l USA,*
  568 U.S. 398 (2013) ................................................................ 10

*Collins v. Morgan Stanley Dean Witter,*
  224 F.3d 496 (5th Cir. 2000) .................................................... 3

*Ctr. for Individual Freedom v. Carmouche,*
  449 F.3d 655 (5th Cir. 2006) .................................................. 15

*Deep S. Ctr. for Env't Just. v. EPA,*
  138 F.4th 310 (5th Cir. 2025)................................... 10, 11, 13

*FDA v. Alliance for Hippocratic Medicine,*
  602 U.S. 367 (2024) ................................................................ 10

*Fin. Oversight & Mgmt. Bd. for Puerto Rico v. Centro de Periodismo Investigativo, Inc.,*
  598 U.S. 339 (2023) ................................................................ 17

*Fla. Prepaid Postsecondary Educ. Expense Bd. v. Coll. Sav. Bank,*
  527 U.S. 627 (1999) ................................................................ 18

*Ford Motor Co. v. Tex. Dep't of Transp.,*
  264 F.3d 493 (5th Cir. 2001) .................................................. 19

*Ga. State Conference of NAACP v. Kemp*,
   841 F.Supp.2d 1320 (N.D. Ga. 2012) .................................................. 15

*Groome Res. Ltd. v. Par. of Jefferson*,
   234 F.3d 192 (5th Cir. 2000) ............................................................ 19

*Haaland v. Brackeen*,
   599 U.S. 255 (2023) ........................................................................ 13

*Hamilton v. Dallas County*,
   79 F.4th 494 (5th Cir. 2023) .............................................................. 8

*Health & Hosp. Corp. of Marion Cnty. v. Talevski*,
   599 U.S. 166 (2023) ........................................................................ 20

*Home Builders Ass'n of Miss., Inc. v. City of Madison*,
   143 F.3d 1006 (5th Cir. 1998) ............................................................ 8

*Hunt v. Wa. State Apple Advertising Comm'n*,
   432 U.S. 333 (1977) ........................................................................ 12

*Ill. Conservative Union v. Illinois*,
   No. 20 C 5542, 2021 WL 2206159 (N.D. Ill. June 1, 2021) ...................... 18

*In re FEMA Trailer*,
   668 F.3d 281 (5th Cir. 2012) .............................................................. 8

*In re Great Lakes Dredge & Dock Co. LLC*,
   624 F.3d 201 (5th Cir. 2010) .............................................................. 9

*Kling v. Hebert*,
   60 F.4th 281 (5th Cir. 2023) .............................................................. 8

*La Union Del Pueblo Entero v. Abbott*,
   151 F.4th 273 (5th Cir. 2025) .................................................. 9, 10, 11

*La Union del Pueblo Entero v. Abbott*,
   No. 24-50783, __ F.4th __, 2026 WL 391215 (5th Cir. Feb. 12, 2026) ....... 14, 19

*La. Fair Hous. Action Ctr., Inc. v. Azalea Garden Props., LLC*,
   82 F.4th 345 (5th Cir. 2023) ............................................................ 10

*Little v. KPMG LLP*,
   575 F.3d 533 (5th Cir. 2009) .............................................................. 8

*McLin v. Twenty-First Jud. Dist.*,
   79 F.4th 411 (5th Cir. 2023) .............................................................. 8

*Medina v. Planned Parenthood South Atlantic*,
   606 U.S. 357 (2025) ........................................................................ 20

*Mi Familia Vota v. Ogg*,
   105 F.4th 313 (5th Cir. 2024) ............................................................ 17

*Montanez v. Samaniego,*
No. 3:24-CV-455-KC, 2026 WL 262795 (W.D. Tex. Jan. 30, 2026) ...................... 17

*Murphy v. NCAA,*
584 U.S. 453 (2018) ............................................................................ 23

*Murthy v. Missouri,*
603 U.S. 43 (2024) .............................................................................. 9

*N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen,*
597 U.S. 1 (2022) ................................................................................ 12

*Nat'l Press Photographers Ass'n v. Higgins,*
145 S. Ct. 140 (2024) ........................................................................ 13

*Nat'l Press Photographers Ass'n v. McCraw,*
90 F.4th 770 (5th Cir.) ...................................................................... 13

*Nat'l Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms, & Explosives,*
700 F.3d 185 (5th Cir. 2012) ............................................................. 12

*New York v. United States,*
505 U.S. 144 (1992) .......................................................................... 23

*NiGen Biotech, L.L.C. v. Paxton,*
804 F.3d 389 (5th Cir. 2015) ............................................................ 16

Paul E. McGreal, *Unconstitutional Politics,*
76 Notre Dame L. Rev. 519, 520–632 (2001) .................................... 23

*Ramming v. United States,*
281 F.3d 158 (5th Cir. 2001) .............................................................. 8

*Rancho Palos Verdes v. Abrams,*
544 U.S. 113 (2005) .......................................................................... 20

*Roake v. Brumley,*
No. 24-30706, __ F.4th __, 2026 WL 482555 (5th Cir. Feb. 20, 2026) .................. 14

*Scott v. Schedler,*
771 F.3d 831 (5th Cir. 2014) ...................................................... 12, 15

*Seminole Tribe of Fla. v. Florida,*
517 U.S. 44 (1996) ............................................................................ 18

*Spokeo, Inc. v. Robins,*
578 U.S. 330 (2016) ............................................................................ 9

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.,*
600 U.S. 181 (2023) .......................................................................... 12

*Tex. All. for Retired Ams. v. Scott,*
28 F.4th 669 (5th Cir. 2022) ............................................................. 16

*Tex. Democratic Party v. Abbott,*
    961 F.3d 389 (5th Cir. 2020) ...................................................................... 18

*Tex. Democratic Party v. Hughes,*
    860 F. App'x 874 (5th Cir. 2021) .............................................................. 17

*Tex. State LULAC v. Elfant,*
    52 F.4th 248 (5th Cir. 2022) ........................................................................ 9

*Thomas v. Union Carbide Agric. Prods. Co.,*
    473 U.S. 568 (1985) .................................................................................... 14

*Turtle Mountain Band of Chippewa Indians v. Howe,*
    No. 25-253 (U.S. Sept. 2, 2025) ................................................................ 21

*U.S. Term Limits, Inc. v. Thornton,*
    514 U.S. 779 (1995) .................................................................................... 24

*United States ex rel. Johnson v. Raytheon Co.,*
    93 F.4th 776 (5th Cir. 2024) ........................................................................ 8

*United States v. Louisiana,*
    196 F. Supp. 3d 612 (M.D. La. 2016) ...................................................... 18

*United States v. Paxton,*
    148 F.4th 335 (5th Cir. 2025) .................................................................... 21

*United States v. Rafoi,*
    60 F.4th 982 (5th Cir. 2023) ................................................................ 18, 19

*United States v. Williams,*
    553 U.S. 285 (2008) .................................................................................... 19

*Urb. Devs. LLC v. City of Jackson,*
    468 F.3d 281 (5th Cir. 2006) ........................................................................ 8

*Vote.Org v. Callanen,*
    89 F.4th 459 (5th Cir. 2023) ................................................................ 17, 20

*Wang v. Paxton,*
    161 F.4th 357 (5th Cir. 2025) .................................................................... 11

*Williamson v. Tucker,*
    645 F.2d 404 (5th Cir. 1981) .................................................................. 4, 8

**Statutes**

42 U.S.C. § 1983 .................................................................................... 20, 21

52 U.S.C. § 10101 ............................................................................ 17, 20, 21

52 U.S.C. § 20510(b)(1) ............................................................................ 15

52 U.S.C. § 20928 ........................................................................................ 5

La. R.S. 18:102 ........................................................................................ 1, 2

La. R.S. 18:104 ................................................................................ 1, 2

La. R.S. 18:1461.4 ........................................................................ 7, 11

**Other Authorities**

2024 La. Sess. Law Serv. Act 500 (S.B. 436) ................................ 2

**Rules**

Fed. R. Civ. P. 12(b)(1) .............................................................. ii, 4, 8

Fed. R. Civ. P. 12(b)(6) ................................................................ ii, 8

**Constitutional Provisions**

La. Const. art. V, § 26(B) .............................................................. 11

U.S. Const. art. I, § 2, cl. 1 .......................................................... 24

U.S. Const. art. I, § 4, cl. 1...................................................... 18, 24

## INTRODUCTION

Louisiana enacted Act 500 to do what every State is entitled, indeed obligated, to do: ensure that only citizens register and vote in its elections. Act 500 affirms that non-citizens are ineligible to register or vote, La. R.S. 18:102(A)(3), and directs that voter registration applicants provide proof of citizenship accordingly, La. R.S. 18:104(D)(2). The Secretary of State has spent the better part of two years pursuing an implementation pathway that the Supreme Court has blessed—seeking United States Election Assistance Commission (EAC) approval to amend Louisiana's Federal Form state-specific instructions. Into that pathway steps Plaintiff to ask this Court to enjoin an implementation of Act 500 that, on its own pleadings, does not exist.

The jurisdictional defects require dismissal. Plaintiff lacks Article III standing: Its alleged injuries are self-inflicted, speculative, and untraceable to these Defendants. Its claims are unripe: Act 500's implementation remains up in the air, and Plaintiff's own Complaint concedes that the Secretary's anticipated approach bears no resemblance to the harms it describes. That is only punched up by Plaintiff's National Voter Registration Act (NVRA) notice being littered with *if*s and *might*s. And sovereign immunity, too, forecloses all claims against the Secretary outright because Plaintiff alleges no ongoing violation sufficient to trigger *Ex parte Young*.

The merits fare no better. The vagueness claim, for which Plaintiff lacks standing twice over, is manufactured. The Civil Rights Act claim is all but foreclosed by the Fifth Circuit's deference to the State's right to guard against voter fraud. And the NVRA claims are defeated by Plaintiff's own allegations, which acknowledge that

Louisiana continues to accept voter-registration applications on the Federal Form with nothing beyond a signed attestation—exactly what the NVRA requires.

The upshot is that Act 500 lawfully ensures that only qualified voters vote in Louisiana elections, the Secretary is implementing it through the administrative process the Supreme Court has expressly avowed, and this suit is a sideshow to manufacture a headline without a justiciable controversy or a claim with any merit. The Court should dismiss.

## BACKGROUND

### I.    THE SECRETARY OF STATE'S IMPLEMENTATION OF ACT 500.

In 2024, the Louisiana Legislature enacted Act 500, which amended the Louisiana Election Code provisions governing voter registration. *See* 2024 La. Sess. Law Serv. Act 500 (S.B. 436). Act 500 expressly provided that a person who is "[n]ot a citizen of the United States of America" is ineligible to register or vote, La. R.S. 18:102(A)(3), and that "[e]ach applicant shall include with his application proof of United States citizenship," La. R.S. 18:104(D)(2).

The law took effect January 1, 2025. Shortly thereafter, the Secretary of State began her implementation by submitting a request to the EAC—consistent with Supreme Court precedent—asking that the Federal Form's Louisiana-specific instructions be amended to reflect Act 500's proof-of-citizenship requirement.[1] ECF No. 30-1; *see Arizona v. Inter Tribal Council of Ariz., Inc. (ITCA)*, 570 U.S. 1, 20 (2013) (States may "request ... that the EAC include [that] requirement among the Federal

---

[1] The original request was supplemented on February 24, 2025.

Form's state-specific instructions."). Specifically, the Secretary requested that, by January 2026, the EAC adopt one of the following options:

- **Option 1(A):** "In addition to the above information, you shall also provide in box 6 , if applicable, your unique immigration identifier (e.g. USCIS/Alien Registration Number; Form I-94, Arrival/Departure Recor, number; Student and Exchange Visitor Information System (SEVIS) ID number; Naturalization/Citizenship Certification Number; or Card Number/I-797 Receipt Number). If you do not have a unique immigration number, you shall provide in box 6 your place of birth (State/Province, Country); sex; and if known, your mother's maiden name (last name before marriage)."

- **Option 1(B):** "In addition to the above information, you must also attach a separate document that legibly states your place of birth (State/Province, Country) and, if applicable, your unique immigration identifier (e.g. USCIS/Alien Registration Number; Form I-94, Arrival/Departure Recor, number; Student and Exchange Visitor Information System (SEVIS) ID number; Naturalization/Citizenship Certification Number; or Card Number/I-797 Receipt Number); and, if known, your mother's maiden name (last name before marriage)."

ECF No. 30-1 at 2–3; *accord* Compl. ¶¶ 105–07, 110–17, 119. The Secretary requested a brief pause in May to provide additional materials, and supplemented again in June. *See* ECF No. 30-2 at 5. The Secretary then awaited the EAC's anticipated August 2025 decision. *See* ECF No. 30-1.

With no response from the EAC by late summer, the Commissioner of Elections issued "Interim Guidance for Implementation of Act 500" to all parish Registrars of Voters on August 28, 2025. *See* Ex. A (Hadskey Declaration and Interim Guidance).[2]

---

[2] For purposes of this motion, the Court can consider the Hadskey Declaration and accompanying Interim Guidance—along with the EAC requests, *see* ECF Nos. 30-3, 30-6, 37-1—in any one of three ways: (1) They are "part of the pleadings" as "referred to in the plaintiff's complaint" and "central to [its] claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 499 (5th Cir. 2000); *see* Compl. ¶ 105 ("Defendant Landry has yet to provide any official guidance about how SB 436 will be enforced[.]"); *id.* ¶ 106 ("Defendant Landry wrote to the EAC…."). (2) They are "matters of public record directly relevant to the issue at hand" that are judicially noticeable. *Funk v. Stryker Corp.*, 631

The Interim Guidance reminded registrars that the State's request remained pending before the EAC and made clear that, "until that process is complete, [Registrars] should continue processing voter registration applications as they always have." *Id.* Accordingly, "[a]pplicants registering to vote are not yet required to show proof of citizenship," and "[o]nce implementation of Act 500 becomes effective," the Commissioner would "provide additional information." *Id.*

In September 2025, the EAC notified the Secretary of its initial decision. ECF No. 30-3. Chair Palmer recommended that "[t]he Commission should approve the State of Louisiana's request" because it "provides the opportunity for applicants to provide necessary information to Louisiana to confirm the eligibility of applicants without any additional action by the applicant." *Id.* at 5. But the Commission deadlocked: Two commissioners "voted affirmatively," and the other two "disapproved" meaning "the recommendation did not receive majority approval as required under the Help America Vote Act," which required the Commission to "reject the request … as presented in Option 1(A)." *Id.* at 5. The EAC's letter emphasized, however, that it "did not independently consider Option 1(B)" and that "Louisiana [could] request that the Commission consider Option 1(B) independent of the Commission's disposition of Option 1(A)." *Id.*

The Secretary promptly did so. ECF No. 30-6 at 2. While that request was pending, the Department's Election Integrity Division completed an investigation and issued a report detailing non-citizens identified on Louisiana's voter rolls and the

F.3d 777, 783 (5th Cir. 2011). And, at minimum, (3) they support Defendants "factual attack" under Rule 12(b)(1). *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. 1981).

elections they had voted in. *See* ECF No. 37-1 at 3. As of May 2025, some 403 non-citizens appeared on Louisiana voter rolls, accounting for hundreds of fraudulent votes in Louisiana elections—some decided by razor-thin margins. *See id.* In light of those findings, the Secretary supplemented her EAC request as to Option 1(B) and requested that the EAC reconsider its prior disposition of Option 1(A). *Id.* at 2.

In December, EAC Chair Donald Palmer called another vote recommending approval of Louisiana's request under both options. *See* Ex. B (2026 EAC Decision). Commissioners Palmer and McCormick voted affirmatively, concluding that "Louisiana has indeed met the necessity justification required by the Statute," *id.* at 5, while Commissioners Hicks and Hovland disapproved, finding that Louisiana's proposed options "fail to meet the standard of necessity and would be at odds with Congress's intent," *id.* at 6. Because the recommendation did not receive majority approval as required, *see* 52 U.S.C. § 20928, the EAC issued its decision not to approve Louisiana's request in January 2026. The State is evaluating its options in light of that decision.

## II.    THIS LAWSUIT AND ITS FACTUAL ALLEGATIONS.

Plaintiff is an advocacy organization challenging the constitutionality and lawfulness of Act 500. Compl. ¶ 7. On May 2, 2025, it sent a letter to the Secretary, which threatened this lawsuit because, it believed, "[t]he documentary-proof-of-citizenship requirements that SB 436 imposes violate [NVRA] limits." ECF No. 2 at 1. The Secretary did not respond, Compl. ¶ 140—not least because there was (and is) no ongoing enforcement of Act 500, much less in the way Plaintiff described.

It sued anyway, naming the Secretary and the Lafayette Parish registrar Charlene Meaux Menard. But the Complaint radically detours from the documentary-proof-of-citizenship allegations in the May 2 letter. There, Plaintiff readily recognizes that "Defendant Landry has crafted an implementation plan," which will likely include "requir[ing] all applicants to provide additional information in their voter registration applications, like immigration identifier, place of birth, sex, and mother's maiden name, so that the state may use that information to attempt to verify the citizenship status of applicants using various databases." ¶ 105; *accord* Ex. A. And the Complaint details how the Secretary was working with the EAC to implement that plan—along with its own color commentary on those ongoing regulatory proceedings. Compl. ¶¶ 106–24; *see* ECF Nos. 30-3, 30-6, 37-1.

Resisting the obvious jurisdictional and merits implications of those admissions, Plaintiff says that, sometime in April, the Lafayette Parish registrar "received an electronic voter registration application" from a non-party "prospective voter [who] listed his birthplace as Guatemala," and the registrar requested he or she provide documentary proof of citizenship, ¶ 102—notwithstanding that the registrar's request is emphatically inconsistent with the Secretary's interim guidance, Ex. A, and the Secretary's stated position of how she plans to enforce Act 500 to the EAC. *See* ECF No. 30-3.

Plaintiff also advances a scattershot set of reasons why, it speculates, Act 500 might be implemented in a way to harm its own operations. Those alleged injuries fall into three overlapping categories:

- **Diversion of resources.** Plaintiff asserts it "currently has no means of scanning or photocopying … 'proofs' of citizenship." ¶¶ 18, 21 ("Plaintiff will need to inform students about the new requirements, help them obtain any required documents and make copies of any required 'proof' of citizenship….").

- **Mission frustration and difficulties for voter registration events.** Plaintiff alleges Act 500 "will severely impede [its] ability" to conduct voter registration events. ¶ 18; ¶¶ 18 ("will make each registration more time consuming to complete—and make students less likely to complete the registration process at all"); 19 ("many students will be unable to provide the 'proof' the law" requires); 22 ("it will be impossible for [Plaintiff] to carry out its voter registration drives as effectively as it could before"); 23 ("Plaintiff cannot prepare those resources or otherwise plan its registration effort.")

- **Speculative legal exposure.** On its telling, "Plaintiff faces criminal consequences if it gets the law wrong." ¶¶ 24 ("Absent any guidance about what the new law actually requires, the threat of these criminal consequences is likely to chill potential volunteers from participating in Plaintiff's registration drives." (citing La. R.S. 18:1461.4(A)(1)); 99.

In addition to asserting harms to the organization itself, Plaintiff also alleges that its members will be injured if Act 500 is implemented in a manner that requires documentary proof of citizenship at the time a voter registration application is submitted. ¶¶ 25 ("If Defendant Landry succeeds in her plan to require additional information, these members must now navigate the more complicated voter registration process."); 26–27. And Plaintiff seems to assert the harms of non-member prospective voters as well. ¶¶ 145 ("Requiring additional information will increase the burden on prospective voters who may not readily have access to this information or be wary about providing it."); 99 ("The specter of these criminal consequences is more than enough to chill voters from even attempting to register without a clear understanding of the law.").

## STANDARD OF REVIEW

**Dismissal for Lack of Jurisdiction.** Rule 12(b)(1) permits a party to raise fatal jurisdictional defects early. *See* Fed. R. Civ. P. 12(b)(1); *e.g.*, *In re FEMA Trailer*, 668 F.3d 281, 286 (5th Cir. 2012) (quoting *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)). When "a Rule 12(b)(1) motion is filed," "the court first considers its jurisdiction." *McLin v. Twenty-First Jud. Dist.*, 79 F.4th 411, 415 (5th Cir. 2023). Standing, sovereign immunity, and ripeness are jurisdictional questions to be considered first when raised in a Rule 12(b)(1) motion. *See Little v. KPMG LLP*, 575 F.3d 533, 540 (5th Cir. 2009) (standing); *Kling v. Hebert*, 60 F.4th 281, 284 (5th Cir. 2023) (sovereign immunity); *Urb. Devs. LLC v. City of Jackson*, 468 F.3d 281, 292 (5th Cir. 2006) (ripeness). Plaintiffs, as "the part[ies] asserting jurisdiction," "constantly bear[] the burden of proof that jurisdiction does in fact exist." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001); *see, e.g.*, *United States ex rel. Johnson v. Raytheon Co.*, 93 F.4th 776, 783 (5th Cir. 2024). On a factual attack under Rule 12(b)(1), as here, "no presumptive truthfulness attaches to the [] allegations." *Williamson v. Tucker*, 645 F.2d 404, 412–13 (5th Cir. 1981) (citation omitted).

**Dismissal for Failure to State a Claim.** Dismissal is also proper where a plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Hamilton v. Dallas County*, 79 F.4th 494, 499 (5th Cir. 2023) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Plaintiffs' "conclusory allegations, unwarranted

factual inferences, or legal conclusions" are "not accept[ed] as true"—only "well-pleaded facts" receive that presumption. *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010) (internal citations and quotations omitted). Once the complaint is stripped to its "well-pleaded facts," those alone "must make relief plausible, not merely possible." *Benfield v. Magee*, 945 F.3d 333, 337 (5th Cir. 2019).

## ARGUMENT

### I.    THE COURT SHOULD DISMISS PLAINTIFF'S CLAIMS UNDER RULE 12(B)(1) FOR LACK OF SUBJECT MATTER JURISDICTION.

#### A. Plaintiff Lacks Article III Standing.

This case should begin and end with standing. As the party asserting jurisdiction, Plaintiff "bears the burden of establishing standing as of the time [it] brought th[e] lawsuit and maintaining it thereafter." *Murthy v. Missouri*, 603 U.S. 43, 58 (2024) (quoting *Carney v. Adams*, 592 U.S. 53, 59 (2020)). "To have standing, '[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *La Union Del Pueblo Entero v. Abbott*, 151 F.4th 273, 285 (5th Cir. 2025) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)). "An organization 'may have standing either by showing it can sue on behalf of its members ("associational" standing) or sue in its own right ("organizational" standing).'" *Id.* (quoting *Tex. State LULAC v. Elfant*, 52 F.4th 248, 253 (5th Cir. 2022)). The Complaint gestures at both theories, but neither works here.

### 1. Plaintiff Lacks Organizational Standing.

Plaintiff's organizational standing theories do not withstand *FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367, 393–94 (2024). "Organizations suing on their own behalf 'must satisfy the usual standards for injury in fact, causation, and redressability that apply to individuals.'" *La Union Del Pueblo Entero*, 151 F.4th at 285(quoting *FDA*, 602 U.S. at 393–94). Plaintiff "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Id.* (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013)). And "[o]nly in the rarest cases can organizations demonstrate standing by showing a defendant's action interferes with their activities." *Deep S. Ctr. for Env't Just. v. EPA*, 138 F.4th 310, 318 (5th Cir. 2025); *see FDA*, 602 U.S. at 395 (Article III requires "direct interference."). Plaintiff fails to allege this to be one of those rare cases.

*First*, Plaintiff's alleged resource diversions are self-inflicted—not cognizable Article III injuries. *See* Compl. ¶¶ 18, 21. Plaintiffs may well "need to divert resources" into buying printers and scanners, training volunteers, and educating people—but the "challenged" law "neither prevents [them] from engaging in its advocacy, education, and training activities nor compels it to take any action." *Deep S. Ctr.*, 138 F.4th at 319–20. "So [their] diversion-of-resources theory fails." *Id.* at 320; *accord La. Fair Hous. Action Ctr., Inc. v. Azalea Garden Props., LLC*, 82 F.4th 345, 353 (5th Cir. 2023) ("the perceptible impairment ... not the drain on the organization's resources, is the concrete and demonstrable injury for organizational standing"

(cleaned up)); *La Union Del Pueblo Entero*, 151 F.4th at 287 ("'[D]ivert[ing] ... resources in response to a defendants' [sic] actions' does not establish standing.").

*Second*, Plaintiff's alleged mission frustration and the alleged added difficulty of planning and executing its registration events also fall short of Article III. *See* Compl. ¶¶ 18–19, 22–23. "Even if [the law] 'makes it more difficult' for [Plaintiff] to achieve its mission—which is far from obvious—that is not the kind of 'impediment' *Alliance* requires." *Deep S. Ctr.*, 138 F.4th at 319; *e.g.*, *Campaign Legal Ctr. v. Scott*, 49 F.4th 931, 938–39 (5th Cir. 2022) ("At best, they might at some future date seek to vindicate the specific interests of third party voters whom they (and their counsel) do not represent—which is both speculative and a far cry from concrete injury to Plaintiffs themselves.").

*Finally*, Plaintiff poses the longshot idea that its volunteers will face "criminal consequences." *See* Compl. ¶ 24 (citing La. R.S. 18:1461.4(A)(1)). That is not a serious argument. Nothing it describes is even arguably prescribed by the statute they invoke, which covers "knowingly, willfully, or intentionally" "intimidat[ing], deceiv[ing], or misinform[ing]" a "prospective voter in matters concerning voting or nonvoting or voter registration or nonregistration, or the signing or not signing of a petition." La. R.S. 18:1461.4(A)(1). And in all events, it is the district attorney, not these defendants, that would prosecute any offense. *See* La. Const. art. V, § 26(B). Nothing about that threat of future prosecution is substantial. *See Wang v. Paxton*, 161 F.4th 357, 361 (5th Cir. 2025) ("To show an injury in the pre-enforcement context,

[a plaintiff] must show that 'the threat of future enforcement … is substantial.'"
(citation omitted)).

### 2. Plaintiff Lacks Associational Standing.

Nor can Plaintiff invoke the supposed injuries to their members as a basis for
Article III standing. *See* Compl. ¶¶ 25–27, 99, 145. To invoke associational standing,
Plaintiff "must demonstrate that '(a) its members would otherwise have standing to
sue in their own right; (b) the interests it seeks to protect are germane to the
organization's purpose; and (c) neither the claim asserted nor the relief requested
requires the participation of individual members in the lawsuit.'" *Students for Fair
Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 199 (2023)
(quoting *Hunt v. Wa. State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977)).
Plaintiff cannot satisfy that burden for at least two reasons.

*First*, no member has standing to sue under the NVRA. *Nat'l Rifle Ass'n of Am.,
Inc. v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 700 F.3d 185, 191 (5th
Cir. 2012) ("The first prong requires that at least one member of the association have
standing to sue in his or her own right."), *abrogated on other grounds by N.Y. State
Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022). That is because the pre-suit
letter Plaintiff sent to the Secretary "did not mention" any individual member. *Scott
v. Schedler*, 771 F.3d 831, 834 (5th Cir. 2014). So any member's suit would necessarily
fail "on standing and notice grounds." *Id.* at 833.

*Second*, the alleged member injury is far too speculative and not traceable to
these Defendants. Plaintiff envisions three "unregistered member[s]" who "do not
have documents that 'prove' their citizenship." ¶ 25. (Notwithstanding that Plaintiff

itself also extensively alleges that Secretary Landry's implementation of Act 500 would not require voter registrants to provide such documents. *See* ¶¶ 105–07, 110–17, 119). Those hypothetical members, it says, must "navigate the law's vague terms," ¶ 25, might then be run through "various government databases," and then "mismatched … because of name changes," and then "subjected to additional requirements or exclusion from the franchise," ¶ 26, or "delays, additional questions," or "a require[ment that] the[y] provide documentary proof of citizenship," ¶ 27. That is, of course, chains of rank speculation. *Deep S. Ctr.*, 138 F.4th at 323. And, even so, the supposed barriers that unregistered members face arise from the time and costs of "obtaining … proof of citizenship," *id.* ¶ 29—with which these Defendants and Act 500 have nothing to do. *See Haaland v. Brackeen*, 599 U.S. 255, 296 (2023) (no standing where "alleged costs are not 'fairly traceable' to the [challenged law]").

### 3. Fifth Circuit Precedent Independently Forecloses Standing for Plaintiff's Pre-enforcement Vagueness Claim.

Even if Plaintiff could plausibly allege a basis for organizational or associational standing (it cannot), the pre-enforcement vagueness claim still fails on standing grounds. As the Fifth Circuit has put it, a plaintiff who has "never been arrested or prosecuted for violating" a statute "lack[s] standing to preemptively challenge [it] under the Due Process Clause." *Nat'l Press Photographers Ass'n v. McCraw*, 90 F.4th 770, 782 (5th Cir.), *cert. denied sub nom. Nat'l Press Photographers Ass'n v. Higgins*, 145 S. Ct. 140 (2024). That is because, when "the available evidence suggests that Defendants have never enforced [the statute] against Plaintiffs (or anybody else)," "[t]he issue of whether the [challenged] provisions are unlawfully

13

vague in their proscriptions is therefore a mere hypothetical dispute lacking the concreteness and imminence required by Article III." *Id.* That is especially so where, as here, Plaintiff's challenge "do[es] not implicate the First Amendment." *Id.* at 782 n.32. And this case is even more attenuated, for it is entirely unclear how this plaintiff organization (which cannot register to vote) would have Act 500 ever enforced against it. Plaintiff thus independently lacks standing for its vagueness claim.

**B. The Claims Are Not Ripe.**

Plaintiff's claims are also unripe because (1) they are not "fit for judicial decision," and (2) there would be no "hardship to the parties" if the Court withheld its consideration. *Braidwood Mgmt., Inc. v. Equal Emp. Opportunity Comm'n*, 70 F.4th 914, 930 (5th Cir. 2023). "[A] claim is 'fit for judicial decision' if it presents a pure question of law that needs no further factual development." *Id.* If a claim is "contingent [on] future events that may not occur as anticipated, or indeed may not occur at all," then the claim is not ripe. *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580–81 (1985). As the Fifth Circuit has recently cautioned, such an inquiry protects from challenges "'degenerat[ing] into conjecture rather than rulings on concrete controversies.'" *Roake v. Brumley*, No. 24-30706, __ F.4th __, 2026 WL 482555, at *3 (5th Cir. Feb. 20, 2026) (en banc) (quoting *La Union del Pueblo Entero v. Abbott*, No. 24-50783, __ F.4th __, 2026 WL 391215, at *2 (5th Cir. Feb. 12, 2026)); *see id.* at *1 ("Nor is constitutional adjudication an exercise in imagination."). So here.

Plaintiff's entire case rests on a hypothetical implementation of Act 500 that its own Complaint concedes does not reflect how the Secretary is implementing the law. *E.g.*, Compl. ¶¶ 198 (The "requirement that voters produce documentary proof

of citizenship violates Section 5."); 25, 27, 52, 55, 58–59, 61, 129, 149–60; *but see* ¶ 105 ("Defendant Landry plans to require all applicants to provide additional information in their voter registration applications, like immigration identifier, place of birth, sex, and mother's maiden name."). That is the precise "speculation" that the fitness prong guards against. *See Braidwood Mgmt.*, 70 F.4th at 926. Nor does Plaintiff face any hardship from the Court withholding review at this time, because their supposed injury is entirely conjectural. *See Ass'n of Am. Physicians & Surgeons Educ. Found. v. Am. Bd. of Internal Med.*, 103 F.4th 383, 396 (5th Cir. 2024). In the pre-enforcement context, any hardship "must arise from a fear of prosecution that is not 'imaginary or wholly speculative.'" *Ctr. for Individual Freedom v. Carmouche*, 449 F.3d 655, 660 (5th Cir. 2006) (citation omitted). Accordingly, there is no practical impediment to Plaintiff waiting to file an appropriately ripened suit if its speculation becomes reality.

### C. Plaintiff Failed to Comply with the NVRA's Notice Requirement.

Plaintiff also failed to comply with the NVRA's jurisdictional notice requirement. *See Scott*, 771 F.3d at 835 ("No standing is therefore conferred if no proper notice is given, since the 90–day period never runs." (quoting *Ga. State Conference of NAACP v. Kemp*, 841 F.Supp.2d 1320, 1335 (N.D. Ga. 2012)). Before an NVRA suit, "[a] person who is *aggrieved* by a violation … may provide written notice of the violation to the chief election official of the State involved." 52 U.S.C. § 20510(b)(1) (emphasis added). Only "[i]f the violation is not corrected within 90 days after receipt of a notice" can "the aggrieved person … bring a civil action." *Id.* § 20510(b)(2).

To be sure, Plaintiff sent the Secretary of State what it calls an NVRA notice on May 2, 2025. *See* ECF No. 2. But that letter makes clear that, at the time it sent the letter, Plaintiff even admitted that they had not been "aggrieved" by anything until the Secretary began enforcing Act 500:

> If you enforce SB 436 in the manner described above, you will violate Sections 5, 6, 7, 8, and 9 of the NVRA.

ECF No. 2 at 4. The fundamental problem is that the Secretary was not "enforc[ing]" the Act then. Rather, she was requesting that the EAC amend the Federal Form's Louisiana-specific instructions. ECF No. 30-3. So what exactly was the violation? What aggrieved Plaintiff? What could the Secretary have "corrected" in 90 days? That is the problem with this pre-enforcement posture—and exactly what the NVRA's notice provision was intended to forbid. There is no violation, no aggrieved party, and thus no requisite notice that could constitute the exhaustion required before a plaintiff files an NVRA suit.

### D. The Secretary Is Entitled to Sovereign Immunity.

#### 1. The Secretary is entitled to sovereign immunity from the vagueness claim (Count VII).

Sovereign immunity forecloses Plaintiff's vagueness claim against the Secretary of State. *See* Compl. ¶¶ 212–31. And *Ex parte Young* offers no refuge. That is principally because Plaintiff does not allege any "ongoing violation[] of federal law." *Tex. All. for Retired Ams. v. Scott*, 28 F.4th 669, 671 (5th Cir. 2022). But for *Ex parte Young* to apply, "a complaint must allege that the defendant *is violating* federal law." *NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389, 394 (5th Cir. 2015). And where a state official "neither enforced the challenged statute against anyone nor threatened to do

16

so," there is no "ongoing" conduct sufficient to trigger *Ex parte Young*. *Mi Familia Vota v. Ogg*, 105 F.4th 313, 332 (5th Cir. 2024).

The Complaint's only mentions of the Secretary relevant to the vagueness claim are faulting her for *inaction* in implementing Act 500 the way Plaintiff believed she would. *See* Compl. ¶ 4 ("Defendant Nancy Landry … still has not issued any guidance to answer that question."); *see also id.* ¶¶ 91–95. On Plaintiff's telling, therefore, there is no "ongoing conduct" of the Secretary sufficient to trigger *Ex parte Young*. That failure plagues the remaining claims as well.

## 2. The Secretary is entitled to sovereign immunity from the materiality-provision claim (Count VI).

The Secretary cannot be subjected to suit under the materiality provision of the Civil Rights Act either. "Congress has not abrogated sovereign immunity for Civil Rights Act claims, as that Act does not provide 'unequivocal statutory language' abrogating state sovereign immunity." *Tex. Democratic Party v. Hughes*, 860 F. App'x 874, 877 n.3 (5th Cir. 2021) (citing 52 U.S.C. § 10101(a)(2)(B)); *see, e.g.*, *Montanez v. Samaniego*, No. 3:24-CV-455-KC, 2026 WL 262795, at *5 (W.D. Tex. Jan. 30, 2026). To abrogate sovereign immunity, Congress "must make its intent … 'unmistakably clear *in the language* of the statute.'" *Fin. Oversight & Mgmt. Bd. for Puerto Rico v. Centro de Periodismo Investigativo, Inc.*, 598 U.S. 339, 346 (2023) (emphasis added). But far from unmistakable textual clarity, "Section 10101 does not explicitly grant individuals the right to bring suit" at all. *Vote.Org v. Callanen*, 89 F.4th 459, 473 (5th Cir. 2023). Accordingly, the Secretary is also entitled to sovereign immunity from the materiality-provision claim.

### 3. The Secretary is entitled to sovereign immunity from the NVRA Claims (Counts I, II, III, IV, & V).

Sovereign immunity likewise forecloses the NVRA claims. Congress enacted the NVRA under its Article I power under the Elections Clause. *See* U.S. Const. art. I, § 4, cl. 1. But "Congress may not abrogate state sovereign immunity pursuant to its Article I powers." *Fla. Prepaid Postsecondary Educ. Expense Bd. v. Coll. Sav. Bank*, 527 U.S. 627, 636 (1999) (citing *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 72–73 (1996)); *accord Allen v. Cooper*, 589 U.S. 248, 257 (2020) ("Article I cannot justify haling a State into federal court."); *cf. Ill. Conservative Union v. Illinois*, No. 20 C 5542, 2021 WL 2206159, at *9 (N.D. Ill. June 1, 2021) ("It is not entirely clear whether the Elections Clause authorizes Congress to abrogate sovereign immunity, however." (comparing *Seminole Tribe*, 517 U.S. at 72–73, and *United States v. Louisiana*, 196 F. Supp. 3d 612, 657 (M.D. La. 2016)). So Plaintiff's NVRA claims against the Secretary necessarily fail on sovereign immunity grounds.

## II. THE COURT SHOULD DISMISS PLAINTIFF'S CLAIMS UNDER RULE 12(B)(6).

### A. The Void-for-Vagueness Claim (Count VII) Fails.

Though it lacks standing to press it twice over, *see supra* Parts I & I.A.3, Plaintiff's vagueness claim independently fails on the merits. "[T]o be unconstitutionally vague, a statute must be impermissibly vague in all its applications, including its application to the party bringing the vagueness challenge." *United States v. Rafoi*, 60 F.4th 982, 996 (5th Cir. 2023) (citation omitted). "In the civil context" (like here) "the statute must be so vague and indefinite as really to be no rule at all." *Tex. Democratic Party v. Abbott*, 961 F.3d 389, 409 (5th Cir. 2020)

(quoting *Groome Res. Ltd. v. Par. of Jefferson*, 234 F.3d 192, 217 (5th Cir. 2000)). Unconstitutional vagueness does not spring up "merely because a company or an individual can raise uncertainty about its application[.]"*Ford Motor Co. v. Tex. Dep't of Transp.*, 264 F.3d 493, 509 (5th Cir. 2001); *accord United States v. Williams*, 553 U.S. 285, 305 (2008) ("Its basic mistake lies in the belief that the mere fact that close cases can be envisioned renders a statute vague."); *accord Abbott*, 2026 WL 391215, at *4 n.2 ("divergent views at the margins of statutory applicability do not demonstrate that a provision is unconstitutionally vague 'in all of its applications'" (citation omitted)).

Under that settled rubric, Plaintiff's vagueness theory is a nonstarter. They suppose that Act 500 is unconstitutionally vague because it does not expressly define "proof of United States citizenship," ¶ 224, or spell out its implementation details, ¶ 226. Several problems follow. *First*, Plaintiff cannot show vagueness even as applied to itself because it is an organization categorically ineligible to register to vote. *See Rafoi*, 60 F.4th at 996; *Abbott*, 2026 WL 391215, at *5 ("a void-for-vagueness analysis usually 'examine[s] the complainant's conduct before analyzing other hypothetical applications of the law.'" (citation omitted)). *Second*, and pointing up the prematurity of this suit, the meaning of "proof of United States citizenship" is obvious from the Secretary's EAC request. *See* ECF No. 30-3 at 2–3 ("your place of birth (State/Province, Country) and, if applicable, your unique immigration identifier (e.g. USCIS/Alien Registration Number; Form I-94, Arrival/Departure Recor, number; Student and Exchange Visitor Information System (SEVIS) ID number;

19

Naturalization/Citizenship Certification Number; or Card Number/I-797 Receipt Number"). For these reasons, Act 500 is not unconstitutionally vague.

### B. The Civil Rights Act Claim (Count VI) Fails.

#### 1. Plaintiff lacks a private right of action to enforce the materiality provision.

Though the claim is plainly barred by sovereign immunity, *supra* Part I.D.2, the Civil Rights Act also precludes a privately enforceable right to enforce the materiality provision because it vests exclusive enforcement authority in the Attorney General. Although the Fifth Circuit has found such a private right exists (without addressing sovereign immunity), *see Vote.Org*, 89 F.4th at 475, that conclusion is no longer tenable after *Medina v. Planned Parenthood South Atlantic*, 606 U.S. 357, 367 (2025). In *Vote.Org*, the Fifth Circuit recognized an existing circuit split as to this private right, 89 F.4th at 476–78, but found the Attorney General's enforcement authority did not preclude a private right of action because "use of Section 1983 is foreclosed only when the [enforcement] scheme is 'incompatible' or 'inconsistent' with Section 1983 enforcement," *id.* at 476 (citing *Health & Hosp. Corp. of Marion Cnty. v. Talevski*, 599 U.S. 166, 187 (2023)). That is not the law post-*Medina*: "a § 1983 action still may not be available if Congress has displaced § 1983's general cause of action with a more specific remedy." *Medina*, 606 U.S. at 368 (citing *Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 120 (2005)); *see id.* at 376 n.6. Such is the case here. The relevant provision of the Civil Rights Act vests exclusive enforcement authority in "the Attorney General" who "may institute for the United States, or in the name of the United States, a civil action." 52 U.S.C. § 10101(c). That

"more specific remedy" necessarily displaces private enforcement action.[3] Accordingly, Plaintiff's Materiality Provision claim must be dismissed.

## 2. In any event, the materiality-provision claim is meritless.

The materiality-provision claim is likewise meritless. Under that provision, "[n]o person acting under color of law shall ... deny the right of any individual to vote in any election because of an error or omission on any record or paper relating to any application, registration, or other act requisite to voting, if such error or omission is not material in determining whether such individual is qualified under State law to vote in such election." 52 U.S.C. § 10101(a)(2)(B). The Fifth Circuit applies "a two-step framework" to assess materiality: (1) "there cannot be a total disconnect between the State's announced interests and the statute enacted," and (2) "whether, under the totality of circumstances, the provision 'meaningfully corresponds' to 'legitimate interests the State claims to have been advancing.'" *United States v. Paxton*, 148 F.4th 335, 341 (5th Cir. 2025) (citation omitted). And the Fifth Circuit has already concluded that an "ID number requirement" for mail-in ballots in Texas, akin to how the Secretary proposes to implement Act 500 for voter registration, "fully complies" with the provision. *Id.* at 338. That is because the Fifth Circuit has "made clear that States have a legitimate interest in combating voter fraud, and thus enjoy

---

[3] The Supreme Court recently stayed (pending disposition of a petition for writ of certiorari) an Eighth Circuit decision holding that Section 2 is unenforceable through 42 U.S.C. § 1983. The subsequently filed petition asks whether Section 2 is enforceable under *either* § 1983 or an implied private right of action, even though the underlying Eighth Circuit decision did not address the private right of action question. *See* Pet. i, *Turtle Mountain Band of Chippewa Indians v. Howe*, No. 25-253 (U.S. Sept. 2, 2025). That petition is fully briefed, and the Supreme Court has not yet taken any action on it. If the Supreme Court grants the *Turtle Mountain* petition, then this Court should withhold consideration of this *a fortiori* Civil Rights Act claim or stay this case to see how, if at all, that decision impacts the implied private right of action question in this case.

'considerable discretion in deciding what is an adequate level of effectiveness to serve [their] important interests in voter integrity.'" *Id.* at 341 (citation omitted). So too for voter qualification determinations in Louisiana.

### C. The NVRA Claims (Counts I, II, III, IV, & V) Fail.

#### 1. Plaintiff has not pled a plausible NVRA violation.

Plaintiff's own allegations plead itself out of its NVRA claims. By Plaintiff's own account, "Louisiana's mail voter registration application … does not ask voters to provide any 'proof' of citizenship' beyond a signed attestation to their qualifications." Compl. ¶ 96. And, "[t]he voter registration application provided to prospective voters at Louisiana's offices of motor vehicles also"—on Plaintiff's telling—"requests no 'proof' of citizenship beyond the attestation." ¶ 97; *accord* Ex. A. In short, despite the loud protestations and what-ifs, Plaintiff alleges the inescapable reality that Defendants are accepting and using both the Federal Form and State Form for mail-in voter registration, consistent with what Plaintiff itself says the NVRA demands. *See* Compl. ¶¶ 176, 185, 190, 195, 198. The Court should thus dismiss those claims.

#### 2. If the NVRA applies on these allegations, the NVRA is unconstitutional.

If the NVRA can be wielded to declare unlawful a duly enacted state law protecting the State's election integrity, the NVRA is itself unconstitutional for at least two reasons.

a. The NVRA violates the Tenth Amendment by commandeering the state legislative process. No matter its enumerated powers, Congress lacks the power "to

issue direct orders to the governments of the States." *Murphy v. NCAA*, 584 U.S. 453, 471 (2018). So "Congress may not simply 'commandee[r] the legislative processes of the States by directly compelling them to enact and enforce a federal regulatory program.'" *Id.* at 472 (quoting *New York v. United States*, 505 U.S. 144, 161 (1992)). If the NVRA operates as Plaintiff supposes, it "unequivocally dictates what a state legislature may and may not do." *Id.* at 474. As the Supreme Court made clear in *Murphy*, that violates the anti-commandeering doctrine whether it "compel[s] a State to enact legislation" or "prohibit[s] a State from enacting new laws," like Act 500. *Id.* Nor does the Elections Clause supply an exception. *See* Paul E. McGreal, *Unconstitutional Politics*, 76 Notre Dame L. Rev. 519, 520–632 (2001) (examining the "text, history, precedent, structure, and prior government practice" to conclude that "Congress cannot commandeer under the Times, Places and Manner Clause"). Applied here, Plaintiff's reading would convert the NVRA from a statute regulating voter-registration practices into a federal veto on Louisiana's lawmaking authority. That problem is especially stark here: Louisiana is implementing Act 500 in a manner the Supreme Court has recognized as constitutionally permissible, *see ITCA*, 570 U.S. at 20, yet Plaintiff would wield the NVRA as a federal veto to nullify Act 500 anyway, in violation of the anti-commandeering doctrine.

b. Even if the NVRA, so construed, did not violate the Tenth Amendment, it would exceed Congress's power under the Elections Clause in contravention of the Qualifications Clause. That former clause provides:

> The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but the Congress may at any time by Law make or alter such Regulations, except as to the Places of chusing Senators.

U.S. Const. art. I, § 4, cl. 1. The latter clause provides:

> [T]he Electors in each State shall have the Qualifications requisite for Electors of the most numerous Branch of the State Legislature.

U.S. Const. art. I, § 2, cl. 1. So naturally, States have the authority "to control who may vote in congressional elections" so long as they do not "establish special requirements that do not apply in elections for the state legislature." *U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779, 864–865 (1995) (Thomas, J., dissenting). But the text and history both show that "[t]he Framers did not intend to leave voter qualifications to Congress." *ITCA*, 570 U.S. at 26 (Thomas, J., dissenting). And "Article I, § 4, also cannot be read to limit a State's authority to set voter qualifications because the more specific language of Article I, § 2, expressly gives that authority to the States." *Id.* at 31. Accordingly, Act 500 fits comfortably within that scheme.

## CONCLUSION

The Court should grant Defendants' motion and dismiss Plaintiff's claims.

Dated: February 27, 2026

Respectfully submitted,

Elizabeth B. Murrill
Attorney General

/s/ Samuel W. Plauché IV
Samuel W. Plauché IV (La #20444)
Megan Terrell (La #29433)
Harry Vorhoff (La #35365)
Plauché & Carr
1110 River Rd S. Suite 200
Baton Rouge, LA 70802
Telephone:  (225) 256-4028
Facsimile:   (206) 588-4255
Billy@plauchecarr.com
Megan@plauchecarr.com
Harry@plauchecarr.com

Counsel for Defendant Nancy Landry

/s/ Zachary Faircloth
Zachary Faircloth (La #39875)
  Principal Deputy Solicitor General
Kelsey L. Smith*
  Deputy Solicitor General
Office of the Louisiana Attorney
General
1885 North Third Street
Baton Rouge, LA 70804
Telephone:  (225) 421-4088
Facsimile:   (225) 326-6795
FairclothZ@ag.louisiana.gov
SmithKel@ag.louisiana.gov

Counsel for Defendants

* admitted pro hac vice